**2026 WI 28**

# Supreme Court of Wisconsin



WISCONSIN STATE LEGISLATURE, et al.,
*Plaintiff, Appellant, Cross-Respondent,*

*v.*

JOSH KAUL, et al.,
*Defendants, Respondents, Cross-Appellants, Petitioners.*

No. 2022AP431
Decided July 10, 2026

REVIEW of a decision of the Court of Appeals
Polk County Circuit Court (Jeffrey L. Anderson, J.) No. 2021CV152.

REBECCA FRANK DALLET, J., delivered the majority opinion of the Court, in which JILL J. KAROFSKY, C.J., and JANET C. PROTASIEWICZ and SUSAN M. CRAWFORD, JJ., joined. BRIAN K. HAGEDORN, J., filed an opinion concurring in part and dissenting in part. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion in which ANNETTE KINGSLAND ZIEGLER, J., joined with respect to ¶¶30–87.

¶1      REBECCA FRANK DALLET, J.   The attorney general represents the state in legal matters, including by bringing civil actions to enforce state statutes or otherwise to represent the state's interests. *See generally* WIS. STAT. § 165.25 (2023–24).[1] Sometimes those civil actions end in settlements through which the attorney general recovers money on behalf of the state.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2023–24 version unless otherwise indicated.

Such settlements may include money earmarked for specific purposes like restitution or attorneys' fees. But they can also include "uncommitted" funds, that is, money that is not designated for a particular purpose by the settlement and is instead left to the attorney general's discretion. This case raises two questions about the depositing and crediting within the state treasury of these uncommitted settlement funds.

¶2 First, when the attorney general deposits uncommitted settlement funds into the general fund and credits them to one or more program appropriations, is he complying with the directive in WIS. STAT. § 165.10 to "deposit all settlement funds into the general fund"? We hold that he is, and therefore reverse in relevant part[2] the contrary decision of the court of appeals. Second, when we granted review in this case, we raised sua sponte the question of whether "the services rendered by Department of Justice personnel in litigating a civil action on behalf of the State of Wisconsin or an executive branch agency constitute 'proceeds from services,' under WIS. STAT. § 20.455(3)(g)?" The court is too divided to reach a majority mandate on that issue. Under these circumstances, we conclude this second issue must be dismissed as improvidently granted.

I

A

¶3 We first set the stage by explaining how revenues wind up in the state treasury and by differentiating between two key terms used in the budget statutes, "deposit" and "credit." When a state agency receives money on behalf of the state, it must place that money into a "fund" within the state treasury. The budget statutes refer to this act as "depositing." *See, e.g.,* WIS. STAT. § 20.001(2)(d) (describing state revenues as being "deposited into funds"). There are two types of "fund," namely, the "general fund" and "segregated funds." The "general fund" consists of "[a]ll moneys in the state treasury not specifically designated in any statute as belonging to any other funds." WIS. STAT. § 25.20. The rest of the treasury is made up of "segregated funds," that is, "revenues which, by law, are deposited into

---

[2] We reverse the court of appeals' decision only in part because we did not grant review of its separate holdings regarding standing and the interpretation of WIS. STAT. § 165.08(1), and those issues are thus not before us. *See Wis. State Legis. v. Kaul*, 2025 WI App 2, ¶¶55–56, 414 Wis. 2d 633, 17 N.W.3d 24 (2024).

funds other than the general fund and are available for the purposes for which such funds are created." § 20.001(2)(d). This case concerns only revenues deposited into the general fund.

¶4    When money is deposited into the general fund, it must be directed to a specific part of the general fund. The budget statutes refer to this act as "crediting." For example, WIS. STAT. § 55.107(2) (emphasis added), provides that reimbursements of costs associated with public-defender representation shall be "*deposited* in the general fund and *credited* to the appropriation account under s. 20.550(1)(L)." The side-by-side use of "deposit" and "credit" in this statute, and in numerous others like it,[3] makes clear that the terms have different meanings. *See Sojenhomer v. Village of Egg Harbor*, 2024 WI 25, ¶¶18–19, 412 Wis. 2d 244, 7 N.W.3d 455 (explaining that side-by-side usage of two terms in a statute can "signify that each term has a separate, non-overlapping meaning"). "Deposit" refers simply to placing money into the general fund or a segregated fund of the state treasury. "Credit" refers to directing money deposited into the general fund to a specific part of the general fund.

¶5    The default crediting rule is that money deposited into the general fund "shall be credited to the general purpose revenues of the

---

[3] *See, e.g.,* WIS. STAT. § 293.87(4)(b) (stating that the Department of Justice "shall *deposit* in the state treasury for *deposit* into the general fund" "[t]he costs of investigation and the expenses of prosecution, including attorney fees," from certain actions, and those funds "shall be *credited* to the appropriation account under s. 20.455(1)(gh)" (emphasis added)); WIS. STAT. § 103.805(1) (stating that DWD "shall *deposit*" fees collected for certain permits "in the general fund and *credit* $5 of that amount forwarded to the appropriation account under s. 20.455(1)(gk)" (emphasis added)); WIS. STAT. § 71.10(5)(h)5. (directing that "[f]rom moneys received for designations for the endangered resources program, an amount equal to the sum of administrative expenses . . . shall be *deposited* in the general fund and *credited*" to an appropriation, and "the net amount remaining . . . shall be *deposited* in the conservation fund and *credited*" to a different appropriation (emphasis added)); WIS. STAT. § 51.605(2) (providing that court-ordered reimbursements for certain public-defender representations "shall be *deposited* in the general fund and *credited* to" a particular appropriation account (emphasis added)); WIS. STAT. § 85.63(2) (mandating that fees charged by the Department of Transportation for access to a surveying-reference-station system "shall be *deposited* in the general fund and *credited* to" an appropriation account (emphasis added)).

general fund unless otherwise specifically provided by law." WIS. STAT. § 20.906(1). Money credited to the general purpose revenues of the general fund is "available for appropriation by the legislature." § 20.001(2)(a). When the legislature has "otherwise specifically provided by law," however, deposits are credited elsewhere. *See* § 20.906(1). For example, "program revenues" are "revenues which are paid into the general fund and are credited by law to an appropriation to finance a specific program or state agency." § 20.001(2)(b). Thus, while program revenues are part of the general fund, they are not credited to the general purpose revenues of the general fund. Instead, program revenues must be credited to a particular program appropriation and are available for spending by a specific state agency according to the terms of that program appropriation.

¶6    The following diagram shows the relationships between the funds described in the paragraphs above. It is not drawn to scale, or meant to illustrate anything else within the treasury, or depict the relative dollar amounts contained in each part of the treasury.



B

¶7    For many years, attorneys general from both political parties have negotiated settlements through which the state recovered significant sums of "uncommitted" funds—in other words, money that was not

specifically designated in the settlement for restitution, attorneys' fees, or another specific purpose. Those attorneys general, in turn, deposited the uncommitted funds into the general fund and credited them to a program appropriation, specifically the Department of Justice's § 20.455(3)(g) program appropriation as "proceeds from services." Once there, the funds were available for the attorney general to spend on the Department's programs and activities pursuant to the program appropriation. *See id.*

¶8 In 2017, the legislature included a provision in the biennial budget, 2017 Wis. Act 59, § 1672g, creating § 165.10 (2017).[4] That version of § 165.10 provided in relevant part that "before the attorney general may expend settlement funds under s. 20.455(3)(g) that are not committed under the terms of the settlement," he had to submit a proposed spending plan to the legislature's joint committee on finance for approval. *See* § 165.10 (2017). If the committee did not schedule a meeting to review the plan within 14 days, the attorney general could spend the money as planned. *Id.* If the committee scheduled a meeting within that period, however, the attorney general could spend the money "only to implement the plan as approved by the committee." *Id.*

¶9 Approximately fifteen months later, in late 2018, the legislature adopted the current version of § 165.10 (2023–24), which provides in its entirety that "[t]he attorney general shall deposit all settlement funds into the general fund." *See id.* In the same act, 2017 Wis. Act 369, the legislature made two other salient changes. First, it ordered a one time "lapse[]" of the "unencumbered balance" of any "settlement funds" in the § 20.455(3)(g) appropriation account "as determined by the attorney general" to the general purpose revenues of the general fund.[5] 2017 Wis. Act 369, § 103(1). Second, it amended the language of § 20.455(3)(g), effectively capping the amount the attorney general could spend from that appropriation. *See* 2017 Wis. Act 369, § 21.

_____

[4] Because this version of § 165.10 was superseded by an amendment after just fifteen months, it never appeared in the published versions of the statutes. For that reason, we cite to that version of the statute as "§ 165.10 (2017)."

[5] The then-attorney general determined that all settlement funds in the § 20.455(3)(g) appropriation were "encumbered," and thus lapsed no funds to the general purpose revenues of the general fund.

C

¶10 After Attorney General Kaul took office in 2019, the legislature argued that § 165.10 required him to deposit all uncommitted settlement funds into the general fund and credit them to the general purpose revenues of the general fund. After both sides exchanged numerous letters that failed to resolve their dispute, the legislature and an individual plaintiff, Adam Jarchow,[6] filed this case in Polk County Circuit Court. The complaint sought a declaration that § 165.10 "requires the Attorney General to 'deposit all settlement funds into the general fund,' . . . and does not allow for the depositing of settlement funds into the appropriation account under [WIS. STAT.] § 20.455(3)(g) or any other statute." Additionally, the complaint requested injunctive relief or a writ of mandamus requiring the attorney general, by operation of § 165.10, to "deposit[] all settlement funds into the general fund . . . and not into the appropriation account under [WIS. STAT.] § 20.455(3)(g) or any other statute." In other words, the legislature asked for declaratory and injunctive relief requiring that all settlement funds be deposited into the general purpose revenues of the general fund.

¶11 The parties filed cross-motions for summary judgment. The circuit court granted partial summary judgment in the attorney general's favor, concluding that § 165.10 requires only that settlement funds be deposited into the general fund, and does not require those funds to be credited to the general purpose revenues of the general fund. As the circuit court explained, the legislature "want[s] me to say not only does it go to the general fund, but it goes to the general purposes revenue. But that's reading the term general purposes revenue into 165.10. It does not say that." Accordingly, the circuit court declared that § 165.10 requires only that all settlement funds be deposited into the general fund. Because the attorney general was already doing that, the circuit court concluded he was

---

[6] For simplicity, we will refer to the legislature and Jarchow collectively as "the legislature." In addition to naming Attorney General Josh Kaul as a defendant, the legislature also included then-Secretary of the Department of Administration Joel Brennan as a defendant. After Secretary Brennan was succeeded in office by Secretary Kathy Koltin Blumenfeld, the circuit court granted a motion to substitute her as a party. *See* WIS. STAT. § 803.10(4)(a). For ease of reference, we refer to Kaul and Blumenfeld collectively as the "attorney general."

complying with § 165.10. Finally, addressing the legislature's assertion in its summary judgment briefing that the attorney general may not credit uncommitted settlement funds to the program appropriation under § 20.455(3)(g) as "proceeds from services," the circuit court said "[t]he issue is, I don't have a declaratory action before me in order to make that declaration. The declaratory action is with 165.10, not with regard to 20.455(3)(g)." As a result, the circuit court declined to issue a declaratory judgment interpreting § 20.455(3)(g).

¶12 The legislature appealed, and the court of appeals reversed the circuit court's decision regarding § 165.10. *See Wis. State Legis. v. Kaul*, 2025 WI App 2, ¶3, 414 Wis. 2d 633, 17 N.W.3d 24. According to the court of appeals, "the circuit court erred in holding that the attorney general could deposit relevant settlement funds not into the general fund but into other accounts over which the [Department of Justice] maintains sole discretion for expenditures." *Id.* That was so, the court of appeals explained, because § 165.10, together with two other statutes, §§ 25.20 and 20.906(1), required that "all settlement funds *must* be deposited into the general purpose revenue fund." *Id.*, ¶35 (emphasis in original). Based on that reasoning, the court of appeals remanded with instructions to the circuit court to issue a declaratory judgment requiring that all uncommitted "settlement funds . . . be deposited into the general purpose revenues of the general fund." *Id.*, ¶55.

¶13 The court of appeals' broad holding that § 165.10 required all uncommitted settlement funds to be "deposit[ed]" into the general purpose revenues of the general fund meant that it did not have to reach the legislature's narrower, alternative contention about the scope and interpretation of § 20.455(3)(g). *See Kaul*, 414 Wis. 2d 633, ¶35. That was true even though the legislature argued in its briefing before the court of appeals that the text of § 20.455(3)(g) could not "reasonably apply to settlement funds," and that the changes 2017 Wis. Act 369 made to § 165.10—specifically deleting the words "settlement funds under s. 20.455(3)(g)"—foreclosed any crediting of uncommitted settlement funds to that appropriation as "proceeds from services." *See* § 20.455(3)(g). Although the court of appeals noted that this issue "was sufficiently raised in the briefs and addressed in the oral argument," it did not resolve it directly. *See Kaul*, 414 Wis. 2d 633, ¶¶16 n.11. That is because if the court's broad interpretation of § 165.10 were correct, that would necessarily imply that uncommitted settlement funds cannot be credited to § 20.455(3)(g) or to any other program appropriation. *See Kaul*, 414 Wis. 2d 633, ¶35. Accordingly, the court of appeals' decision never even used the words "proceeds from

services," let alone interpreted them by addressing this alternative argument. Nevertheless, when we granted review of the court of appeals' decision regarding § 165.10, we asked the parties to address whether "the services rendered by Department of Justice personnel in litigating a civil action on behalf of the State of Wisconsin or an executive branch agency constitute 'proceeds from services' under WIS. STAT. § 20.455(3)(g)?"

## II

¶14   We review decisions granting or denying summary judgment de novo. *See Estate of Lorbiecki v. Pabst Brewing Co.*, 2026 WI 12, ¶14, 419 Wis. 2d 755, 33 N.W.3d 800. In doing so, we also must interpret statutes, another question of law that we review de novo. *See Serv. Emps. Int'l Union Healthcare Wis. v. WERC*, 2025 WI 29, ¶5, 416 Wis. 2d 688, 22 N.W.3d 876.

## III

¶15   The legislature's primary contention is that the attorney general is violating § 165.10 when he deposits uncommitted settlement funds in the general fund and credits those funds anywhere except the general purpose revenues of the general fund. Assuming we disagree, however, and in response to the court's order granting review and adding a second issue, the legislature further contends that uncommitted settlement funds may not be credited to the program appropriation in § 20.455(3)(g) because they are not "proceeds from services" as that phrase is used in the statute.

## A

¶16   Section 165.10, entitled "Deposit of settlement funds," provides in its entirety that "[t]he attorney general shall deposit all settlement funds into the general fund."

¶17   This simple, declarative sentence identifies a class of state money ("settlement funds") and imposes a single, narrow restriction on where that money must be deposited (into the state treasury, specifically "the general fund"). *See id.* It says nothing whatsoever about where that money may or must be credited after it is deposited. Further, the "general fund," as explained above, consists of "[a]ll moneys in the state treasury not specifically designated in any statute as belonging to any other funds." *See* § 25.20. In other words, everything except money belonging to "segregated funds" falls under the broad umbrella of the "general fund." *See* §

20.001(2)(a)–(dm). That includes not just the general purpose revenues of the general fund, but also program revenues credited to specific program appropriations. *See id.* (2)(a)–(c). Thus, when settlement funds deposited into the general fund are credited to a specific program appropriation, those funds remain within the general fund. For this reason, the attorney general is complying with § 165.10 when he deposits uncommitted settlement funds into the general fund, even if he also credits those funds to a program appropriation.

¶18 The legislature nonetheless argues that the attorney general violates § 165.10 when he deposits uncommitted settlement funds into the general fund and credits them anywhere except the general purpose revenues of the general fund. But to reach that conclusion, we would have to conflate two distinct terms—"credit" and "deposit"—or read restrictions on where money may be credited into a statute that contains none. Indeed, that is what the court of appeals did when it interpreted § 165.10 as requiring that "[uncommitted] settlement funds *must* be deposited into the general purpose revenue fund." *See Kaul*, 414 Wis. 2d 633, ¶35 (emphasis in original). As that sentence alone makes clear, the court of appeals conflated § 165.10's requirement that uncommitted settlement funds be "deposit[ed]" into the general fund with a requirement that those funds also be credited to the general purpose revenues of the general fund. In other words, the court of appeals read into § 165.10 a requirement that deposits of uncommitted settlement funds be credited to the general purpose revenues of the general fund. *See Kaul*, 414 Wis. 2d 633, ¶¶33–35. In defending the court of appeals' decision, the legislature makes a similar argument, namely that we should read crediting restrictions imposed by other statutes[7] into the single depositing restriction imposed by § 165.10.

---

[7] The legislature relies on several such statutes in service of this argument. *See, e.g.*, § 20.906(1) (requiring that "[a]ll moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law"); § 20.455(3)(g) (providing for crediting of, among other things, "all proceeds from services" to a program appropriation to the Department of Justice); § 20.455(1)(gh) (creating a program appropriation to the Department of Justice for "[m]oneys received under" various statutes "for the expenses of investigation and prosecution of violations, including attorney fees"). But whether the attorney general is violating with these statutes, and the restrictions they impose on where deposited money may be credited, tells us nothing about whether the attorney general is violating § 165.10. Nevertheless, we emphasize that, as explained in part III.B, *infra*, we express no view about the

¶19    The problem with these arguments is that "we interpret the statutory language the legislature enacted, and will not read into a statute language that it does not contain or reasonably imply." *See Sojenhomer*, 412 Wis. 2d 244, ¶20 (collecting cases)). As the many statutes cited in ¶4 and n.3, *supra*, demonstrate, when the legislature wants to direct both that money is to be deposited into the general fund *and* that it must be credited somewhere specific, it knows how to do so. But § 165.10 does not even reference crediting, let alone restrict where the attorney general may credit money he deposits within the general fund. Accordingly, like the circuit court, we decline to read into § 165.10 atextual restrictions on where deposits to the general fund may be credited. Therefore, we hold that the attorney general is complying with § 165.10 when he deposits uncommitted settlement funds in the general fund, even if those settlement funds are credited to a specific program appropriation within the general fund.

B

¶20    When we granted review in this case, we added a second issue, namely "does the language of WIS. STAT. § 20.455(3)(g) authorize the crediting of civil action proceeds to that appropriation? In other words, do the services rendered by Department of Justice personnel in litigating a civil action on behalf of the State . . . or an executive branch agency constitute 'proceeds from services' under WIS. STAT. § 20.455(3)(g)?"

¶21    After reviewing the record and the briefs of both parties, and after hearing oral arguments, the court is too divided to reach a majority mandate on that issue. Generally, when the court is too divided to reach a majority as to the mandate, we affirm the decision under review. *See, e.g., Pepsi-Cola Metro. Bottling Co., Inc. v. Emps. Ins. Co.*, 2023 WI 42, ¶1, 407 Wis. 2d 384, 990 N.W.2d 267 (per curiam). Under these circumstances, however, there is no decision to affirm with respect to § 20.455(3)(g). That is because neither the circuit court nor the court of appeals decided this question we raised,[8] and as the circuit court previously explained, the

proper interpretation of these other crediting statutes, or whether the attorney general is violating with them.

[8] As explained previously, the court of appeals never addressed this question due to its erroneous interpretation of § 165.10. In holding that § 165.10 required the attorney general to "deposit[]" all uncommitted settlement funds into

legislature did not seek a declaratory judgment regarding the proper interpretation of the phrase "proceeds from services" in § 20.455(3)(g) in its complaint. Given that, we conclude that dismissal of this additional issue as improvidently granted is warranted.

IV

¶22    We conclude that the attorney general complies with § 165.10 when, in accordance with the straightforward language of the statute, he deposits settlement funds into the general fund. That is true even if the attorney general also credits those deposited settlement funds to one or more program appropriations contained within the general fund. Accordingly, we reverse in relevant part the court of appeals' decision. We further determine that the second issue regarding the program appropriation in § 20.455(3)(g) should be dismissed as improvidently granted.

*By the Court.*—The decision of the court of appeals is reversed in part.

---

"the general purpose revenue fund," the court of appeals incorrectly assumed that § 165.10 precludes the attorney general from crediting such funds to the appropriation in § 20.455(3)(g), or any other program appropriation. *See Kaul*, 414 Wis. 2d 633, ¶35. For that reason, the court of appeals never interpreted the words "proceeds from services" in § 20.455(3)(g), or determined whether uncommitted settlement funds fall within that phrase. Because neither the court of appeals nor this court have answered that question, it remains unresolved.

BRIAN K. HAGEDORN, J., concurring in part and dissenting in part.

¶23   I agree with the majority that the court of appeals misconstrued WIS. STAT. § 165.10. However, I strongly disagree with the court's failure to decide whether the monies received from settlements in civil cases litigated by the Department of Justice constitute "proceeds from services" under WIS. STAT. § 20.455(3)(g). The majority declares this an "issue" which we are now dismissing as "improvidently granted." But we granted review in a case, and the court is not dismissing the case as a whole. Rather, it is declining to decide an issue—one that was briefed, argued, opined on by the court of appeals, and central to the dispute between the parties. Prior to this, I am unaware of this court dismissing an *issue* as improvidently granted.

¶24   It is true that this court asked the parties, as a second issue, to address the meaning of WIS. STAT. § 20.455(3)(g). But we did not do so out of thin air. The court of appeals majority and dissent both opined on whether the attorney general may treat settlement funds as "proceeds from services" under § 20.455(3)(g), reaching different conclusions. *See Wis. State Legis. v. Kaul*, 2025 WI App 2, ¶34, 414 Wis. 2d 633, 17 N.W.3d 24; *id.*, ¶¶58, 72–75 (Neubauer, J., dissenting). We added this issue to ensure it was separately and fully addressed, and to ensure the larger dispute between the parties had a resolution.

¶25   The court justifies its decision to dismiss an issue as "improvidently granted" on the grounds that the court cannot reach a resolution. However, we are not divided on the meaning of WIS. STAT. § 20.455(3)(g). In fact, a majority of the court agrees on the proper interpretation of the statute. Our disagreement is simply on how to style the mandate on the second issue, even though—regardless of how we label it—that particular postscript will have no practical effect on the parties in this case. The court's inability to come together leaves the parties with no clarity about how to conform their actions to the law with respect to § 20.455(3)(g). It is most unfortunate that the court—even while we agree—cannot produce an opinion effectuating our agreement.[1] The parties

---

[1] When the court is divided on an issue and cannot resolve it, we have, at times, explained where we agree and disagree. For example, in *State v. Hambly*, in a case seating six justices, the court equally divided on an issue and explained—by name—how each of the six justices would have resolved the issue. 2008 WI 10,

deserve better, and so does Wisconsin. I respectfully concur in part and dissent in part.

---

¶¶4–5, 307 Wis. 2d 98, 745 N.W.2d 48; *see also Cont'l Cas. Co. v. Indus. Comm'n*, 26 Wis. 2d 470, 473–74, 132 N.W.2d 584 (1965); *State v. Brookshaw*, 70 Wis. 2d 605, 609–10, 235 N.W.2d 520 (1975).

REBECCA GRASSL BRADLEY, J., with whom ANNETTE KINGSLAND ZIEGLER, J., joins with respect to ¶¶30–87, dissenting.

## Preliminary Statement

¶26 If an attorney makes a false statement of fact or law, she may be sanctioned for violating the rules of professional conduct for attorneys. SCR 20:3.3. Unfortunately, supreme court justices can deceive the People of Wisconsin with impunity. Reaching an opinion favorable to Democratic Attorney General Josh Kaul (who faces a contested election in November), the majority dodges the issue we asked the parties to brief:

> If the court determines that WIS. STAT. § 165.10 *and § 20.906(1)* should be interpreted not to prohibit the attorney general from crediting settlement funds into the appropriation under WIS. STAT. § 20.455(3)(g), does the language of WIS. STAT. § 20.455(3)(g) authorize the crediting of civil action settlement proceeds to that appropriation? In other words, do the services rendered by Department of Justice personnel in litigating a civil action on behalf of the State of Wisconsin or an executive branch agency constitute "proceeds from services" under WIS. STAT. § 20.455(3)(g)?

Order Granting Petition for Review at 1–2, *Wis. State Legislature v. Kaul*, No. 2022AP431 (Wis. Dec. 5, 2025) (emphasis added).

¶27 The majority erases WIS. STAT. § 20.906(1) from this court's grant order, Majority op., ¶2, because § 20.906(1) contradicts the majority's holding—and the majority knows it. The majority later acknowledges "[t]he default crediting rule is that money deposited into the general fund 'shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law.' WIS. STAT. § 20.906(1)." Majority op., ¶5. The majority refuses to apply the law, which favors the Republican-controlled legislature over Democrat Attorney General Josh Kaul. Lady Justice wears a blindfold, not blinders.

¶28 The majority rationalizes its game of dodgeball[1] by misrepresenting the legislature's argument. The majority says, "In defending the court of appeals' decision, the legislature makes a similar argument, namely that we should read crediting restrictions imposed by other statutes into the single depositing restriction imposed by § 165.10." *Id.*, ¶18. The legislature *never* isolated its arguments to WIS. STAT. § 165.10. The legislature's argument is replete with references to § 20.906(1). The legislature specifically asked this court to interpret and apply § 20.906(1)'s default crediting rule, arguing that "section 165.10—*read in tandem with section 20.906(1)'s default rule* that deposits of state funds into the treasury must be credited to the general purpose revenues of the general fund 'unless otherwise specifically provided by law'—obligates the Attorney General to deposit all settlement funds into the general fund for general purpose revenue" (emphasis added).

¶29 The majority's machinations have left insufficient time to convert my previously-drafted opinion into a dissent, so (consistent with precedent established by other members of the court) I reproduce below what the majority opinion should have been. *See State v. McAdory*, 2025 WI 30, ¶41, 417 Wis. 2d 194, 22 N.W.2d 844 (Ziegler, J., concurring); *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶72, 356 Wis. 2d 665, 849 N.W.2d 693 (Abrahamson, C.J., dissenting). This is not the first time justice has taken a back seat to political interests. The members of the majority extend the Democrats' almost unbroken winning streak in litigation against the Republican legislature since the progressives took control.[2] In

---

[1] "If you can dodge a wrench," you can dodge the merits of a politically inconvenient case. DODGEBALL: A TRUE UNDERDOG STORY, Disney+ (20th Century Fox 2004) ("If you can dodge a wrench, you can dodge a ball.").

[2] As I documented in *Evers v. Marklein*, "With respect to the exercise of governmental powers, three members of the majority (Justices Ann Walsh Bradley, Rebecca Frank Dallet, and Jill J. Karofsky) have invariably ruled against the legislature and in favor of the executive branch." 2024 WI 31, ¶57 n.2, 412 Wis. 2d 525, 8 N.W.3d 395 (Rebecca Grassl Bradley, J., concurring), citing the following cases:

- *Clarke v. WEC*, 2023 WI 79, 410 Wis. 2d 1, 998 N.W.2d 370 (adopting Governor Evers' position and invalidating the legislature's redistricting maps);

- *Wis. Mfrs. & Com. v. Evers*, 2022 WI 38, 401 Wis. 2d 699, 977 N.W.2d 374 (allowing Governor Evers' Department of Health Services to release the names of Wisconsin employers whose employees tested positive for COVID-19);

- *Johnson v. WEC*, 2022 WI 14, 400 Wis. 2d 626, 971 N.W.2d 402, *rev'd sub nom. Wis. Legislature v. Wis. Elections Comm'n*, 595 U.S. 398 (2022) (per curiam) (adopting Governor Evers' proposed congressional map and state legislative maps and rejecting the legislature's);

- *Clean Wis., Inc. v. DNR*, 2021 WI 72, 398 Wis. 2d 433, 961 N.W.2d 611 (ruling against the legislature and expanding executive branch power by allowing administrative agencies to impose requirements not explicitly permitted by statute);

- *Clean Wis., Inc. v. DNR*, 2021 WI 71, 398 Wis. 2d 386, 961 N.W.2d 346 (ruling against the legislature and in favor of Governor Evers' Department of Natural Resources in allowing the DNR to impose requirements not explicitly permitted by statute);

- *Fabick v. Evers*, 2021 WI 28, ¶¶74–148, 396 Wis. 2d 231, 956 N.W.2d 856 (Ann Walsh Bradley, J., dissenting) (joined by Dallet and Karofsky, JJ.) (dissenting from decision that Governor Evers' executive orders proclaiming successive states of emergency based on COVID-19 exceeded the Governor's powers);

- *Democratic Nat'l Comm. v. Bostelmann*, 2020 WI 80, ¶¶15–27, 394 Wis. 2d 33, 949 N.W.2d 423 (Dallet, J., dissenting) (joined by Ann Walsh Bradley and Karofsky, JJ.) (dissenting from decision recognizing legislature's right to participate as a party in litigation defending the validity of state laws);

- *Bartlett v. Evers*, 2020 WI 68, ¶¶109–71, 393 Wis. 2d 172, 945 N.W.2d 685 (Ann Walsh Bradley, J., concurring in part, dissenting in part) (joined by Dallet, J.) (in original action requesting a declaration that Governor Evers exceeded his constitutional authority to partially veto appropriation bills,

Justices Ann Walsh Bradley and Dallet were the only justices who would have declared all of Governor Evers' vetoes constitutional);

- *Serv. Emps. Int'l Union, Loc. 1 v. Vos*, 2020 WI 67, ¶¶163–88, 393 Wis. 2d 38, 946 N.W.2d 35 (Dallet, J., concurring in part, dissenting in part) (joined by Ann Walsh Bradley, J.) (dissenting from decision upholding the constitutionality of the legislature's involvement in certain litigation prosecuted or defended by the attorney general and joining decision invalidating legislature's regulation of guidance documents issued by the executive branch);

- *Wis. Legislature v. Palm*, 2020 WI 42, ¶¶122–30, 391 Wis. 2d 497, 942 N.W.2d 900 (Ann Walsh Bradley, J., dissenting) (joined by Dallet, J.) (dissenting from decision declaring Governor Evers' appointed DHS Secretary failed to follow the emergency rulemaking procedures established by the legislature and exceeded her powers in issuing order confining all people to their homes, forbidding travel and closing businesses); *id.*, ¶¶132–63 (Dallet, J., dissenting) (joined by Ann Walsh Bradley, J.) (same);

- *League of Women Voters of Wis. v. Evers*, 2019 WI 75, ¶¶43–54, 387 Wis. 2d 511, 929 N.W.2d 209 (Dallet, J., dissenting) (joined by Ann Walsh Bradley, J.) (dissenting from decision declaring the December 2018 extraordinary session of the legislature constitutional and embracing Governor Evers' position to the contrary).

The new majority has continued its political favoritism since *Evers v. Marklein*:

- *Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429 (ruling in favor of Governor Evers' Wisconsin Elections Commission and against the legislature in overruling this court's precedent from just two years prior establishing that WIS. STAT. § 6.87 precludes the use of secure drop boxes for the return of absentee ballots to municipal clerks);

- *LeMieux v. Evers*, 2025 WI 12, 415 Wis. 2d 422, 19 N.W.3d 76 (granting Governor Evers unrestricted authority to exercise his "partial veto" to rewrite appropriation bills without the legislature's approval, including the creation of an infamous 400-year tax increase);

Wisconsin as elsewhere, "[d]arkness descends on the Rule of Law." *League of United Latin Am. Citizens v. Abbott*, 809 F. Supp. 3d 502, 672 (W.D. Tex. 2025), *rev'd summarily sub nom*, *Abbott v. LULAC*, 224 L. Ed. 2d 525 (2026).

\* \* \*

¶30 REBECCA GRASSL BRADLEY, J. *Wisconsin's money belongs to the People of Wisconsin. The People control the allocation and expenditure of Wisconsin's revenues through their constitutional representatives in the Wisconsin Legislature.* WIS. CONST. ART. VIII, § 2 (*"No money shall be paid out of the treasury except in pursuance of an appropriation by law."*). *For decades, Wisconsin attorneys general have siphoned tens of millions of dollars belonging to the People from large multistate consumer protection and antitrust settlements, to various budget appropriations controlled by the Department of Justice (DOJ). The Wisconsin Legislature became aware of this practice as early as 2010, and has twice legislated to reassert constitutional control over the People's revenues. Attorneys general have resisted these efforts, interpreting the legislature's enactments in a variety of creative ways in order to continue spending the People's settlement funds. The fight between Attorney General Josh Kaul and the Wisconsin Legislature over those settlement funds culminated in this litigation.*

---

- *Evers v. Marklein*, 2025 WI 36, 417 Wis. 2d 453, 22 N.W.3d 789 (granting Governor Evers' agencies unchecked authority to promulgate administrative rules with the force and effect of law).

The members of the progressive majority are the only justices who demonstrate nearly unwavering fealty to one party. *But see, e.g.*, *Wis. State Legislature v. Wis. Dep't of Pub. Instruction*, 2025 WI 27, 416 Wis. 2d 611, 22 N.W.3d 932. The rest of us render decisions in accordance with the Wisconsin Constitution and the Wisconsin Statutes, which not surprisingly produces opinions that favor neither political party. *See, e.g.*, *Wisconsin Elections Comm'n v. LeMahieu*, 2025 WI 4, ¶¶38–45, 414 Wis. 2d 571, 16 N.W.3d 469 (Rebecca Grassl Bradley, J., concurring) (applying this court's precedent in *Prehn* and affirming that the Wisconsin Statutes permit holdover directors and board members at executive agencies after their terms expire, retaining executive power); *Kaul v. Wis. State Legislature*, 2025 WI 23, 416 Wis. 2d 322, 21 N.W.3d 513 (holding that civil enforcement actions are a core executive power and the legislature may not veto Department of Justice settlements with the targets of enforcement).

¶31     *Kaul claims before this court that* WIS. STAT. § 165.10 (2023–24),[3] *a statute the legislature enacted to resolve the interbranch dispute over settlement funds, requires the attorney general only to "deposit" "settlement funds" to the "general fund" of the state treasury. That is correct. Kaul additionally claims a longstanding default rule controlling budget allocation in the Wisconsin budget statutes,* WIS. STAT. § 20.906(1), *allows him to continue "crediting" those moneys to a DOJ program appropriation,* WIS. STAT. § 20.455(3)(g). *That is incorrect. We affirm the Court of Appeals and hold that* WIS. STAT. § 165.10 *requires the attorney general to deposit settlement funds to the "general fund" of the state treasury. Section 20.906(1) further requires the attorney general to "credit" settlement funds to the "general purpose revenues of the general fund." Under* WIS. STAT. § 20.906(1), *the attorney general may credit settlement funds somewhere other than the "general purpose revenues of the general fund" only if the legislature "otherwise specifically provide[s]" another location.* WISCONSIN STAT. § 20.455(3)(g) *does not serve as an appropriation account for settlement funds. Under the law, the attorney general must give the People their money back.*

## I. BACKGROUND

¶32     *The attorney general represents the People of Wisconsin in court.* WIS. STAT. § 165.25 *et seq. The scope of his representation includes investigations and civil actions to enforce state laws and to protect Wisconsinites under federal law, whether initiated by the attorney general in his own discretion or at the request of executive agencies.* § 165.25(1)(m). *It is the province of the attorney general to enforce the People's laws. See Kaul v. Wisconsin State Legislature, 2025 WI 23, ¶¶47–48, 416 Wis. 2d 322, 21 N.W.3d 513. Once an enforcement action concludes, however, the attorney general's job is done.* WIS. CONST. ART. VI, § 3 *("The powers, duties and compensation of the treasurer and attorney general shall be prescribed by law.") The Wisconsin Legislature allocates any revenue arising from an enforcement action via appropriations.* WIS. CONST. ART. VIII, § 2 *("No money shall be paid out of the treasury except in pursuance of an appropriation by law.").*

¶33     *As a general rule, unless the Wisconsin Legislature directs particular enforcement revenues to a particular appropriation, the revenues are to be deposited into the "general fund" of the treasury and credited to the "general*

---

[3] *All subsequent references to the Wisconsin Statutes are to the 2023–24 version unless otherwise indicated.*

*purpose revenues of the general fund." WIS. STAT. § 20.906(1).[4] For example, the legislature requires the attorney general to enforce certain Wisconsin environmental laws on behalf of the Department of Natural Resources (DNR), and the legislature plainly provides where revenues from those enforcement actions go: the environmental fund. See, e.g., WIS. STAT. § 299.95 (requiring the attorney general to "enforce chs. 281 to 285" among others); WIS. STAT. § 283.87(1) ("All moneys recovered under this section shall be deposited into the environmental fund."). The environmental fund is a subject-matter-specific "segregated fund" of the treasury, separate and apart from the general fund. WIS. STAT. § 25.46(1)(u) ("There is established a separate nonlapsible trust fund designated as the environmental fund, to consist of: . . . [a]ll moneys . . . that are received under settlement agreements or orders in settlement of actions or proposed actions for violations of chs. 280 to 299 . . . ").[5] Similarly, opioid settlements are allocated to*

---

[4] *WISCONSIN STAT. § 20.906(1), titled "**Receipts and deposits of money."** provides:*

> **(1)** *FREQUENCY OF DEPOSITS. Unless otherwise provided by law, all moneys collected or received by any state agency for or in behalf of the state or which are required by law to be turned into the state treasury shall be deposited in or transmitted to the state treasury at least once a week and also at other times as required by the governor or the secretary of administration and shall be accompanied by a statement in such form as the secretary of administration may prescribe showing the amount of such collection and from whom and for what purpose or on what account the same was received. All moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law.*

[5] *"Lapsing" means moving money from an appropriation to its original source. For example, the legislature may "lapse" moneys assigned to an appropriation by repealing the appropriation. See WIS. STAT. § 20.002(3m) ("Whenever an appropriation is repealed, on the effective date of the repeal the unencumbered balance of the appropriation lapses to the fund from which it was appropriated . . . ."). Alternatively, the legislature may enact a one-time authorization and lapse moneys from an appropriation back to the general fund. See, e.g., 2017 Wis. Act. 369. Other actors may lapse funds as well. See, e.g., WIS. STAT. § 20.002(6) ("Whenever a continuing appropriation from any fund has accomplished its purpose or is no longer deemed necessary for such purpose, the secretary of administration is authorized to lapse such appropriation balance . . . to the fund from which appropriated . . . .").*

*the program appropriations of the Department of Health Services. WIS. STAT.
§ 165.12(3)(a).*

## A. HISTORY

¶34 *The dispute between the legislature and the attorney general arose
over revenues generated from antitrust and consumer protection enforcement,
which, unlike environmental enforcement, fall under the default rule for crediting
moneys to the general purpose revenues of the general fund. As early as 2005,
attorneys general began to join other states and the federal government in large
multistate antitrust and consumer protection enforcement actions. (R. 108:16.)
These actions are prosecuted under a variety of state and federal statutes, and in a
variety of forums within and outside of Wisconsin. (R. 91.) Given the cost and
complexity of taking multistate litigation to trial, such suits often resolve via
voluntary settlements or consent judgments. (R. 108:16.) Sometimes called a
"consent decree" or a "stipulated judgment," a consent judgment is a negotiated
settlement in which parties agree out of court to remedies including restitution for
victims, costs of investigation, forfeitures, surcharges, fees, and injunctive relief.
(R. 107:3.) Once reduced to an agreement, the attorney general files a complaint in
court and simultaneously submits a stipulated judgment. (R. 107:3–4.) The court
then memorializes the consent judgment as a court order, enabling parties to
initiate contempt proceedings to enforce the judgment.[6] (R. 107:4.)*

¶35 *Settlement agreements often include well-defined line items for
payments like restitution to victims and attorney fees. Historically, the attorney
general has also negotiated antitrust and consumer protection settlement
agreements assigning large portions of settlements to his own "discretion." (R.
108:17; 16:30.) Wisconsin attorneys general accordingly developed a practice of
crediting certain line items to DOJ program appropriations for restitution and
attorney fees, but rather than remit "discretionary" settlement funds to the
treasury's general purpose revenues for the legislature to appropriate, attorneys*

---

[6] *Attorneys general may also pursue an "Assurance of Voluntary Compliance," or
other out-of-court agreement—essentially a private contract. (R. 107:3.) Like a consent
judgment, a voluntary agreement may involve injunctive or monetary relief. (R. 107:3.)
Unlike a consent judgment, a voluntary agreement does not involve a court order and
therefore cannot be enforced via contempt proceedings. Instead, the attorney general must
either file a civil action for breach of contract or initiate a new civil enforcement action. (R.
107:4.) Private settlement agreements may arise pre-suit or at any stage of litigation prior
to judgment.*

*general credited them to a DOJ program appropriation for "Gifts, grants, and proceeds," as defined under WIS. STAT. § 20.455(3)(g).[7] The attorney general and the secretary of administration also carved off a section of the WIS. STAT. § 20.455(3)(g) appropriation in the state's financial management system, titling that account the "Attorney General — Discretionary." (R. 97:69.) The legislature, however, never made an appropriation for an "Attorney General — Discretionary" account in WIS. STAT. § 20.455.*

## B. THE WISCONSIN BUDGET STATUTES

*¶36     A full understanding of the longstanding dispute between the Wisconsin Legislature and Wisconsin attorneys general requires familiarity with Wisconsin budget statutes. At the most general level, ch. 25 of the Wisconsin Statutes organizes the state treasury into "funds." WISCONSIN STAT. § 25.20 establishes the state's "general fund," which consists of "all moneys in the state treasury not specifically designated in any statute as belonging to any other funds." Chapter 25 also enumerates subject-matter-specific segregated "funds." See WIS.*

---

*[7] WISCONSIN STAT. § 20. 455(3)(g) provides: "There is appropriated to the department of justice for the following programs:*

*(3) ADMINISTRATIVE SERVICES.*

        *. . . .*

*(g) Gifts, grants and proceeds. The amounts in the schedule to carry out the purposes for which gifts and grants are made and collected. All moneys received from gifts and grants and all proceeds from services, conferences, and sales of publications and promotional materials, except as provided in sub. (2) (gm) and (gp) and to transfer to s. 20.505 (1) (kg), at the discretion of the attorney general, an amount not to exceed $98,300 annually, shall be credited to this appropriation account.*

*WIS. STAT. § 20.455(3)(g) is a "continuing appropriation," meaning that unused funds "are expendable until fully depleted or repealed by subsequent action of the legislature." See WIS. STAT. §§ 20.001(3)(c), 20.455(3)(g). Unlike other appropriations, continuing appropriations do not "revert" at the end of a budget cycle back to the general purpose revenues of the general fund. Compare WIS. STAT. §§ 20.001(3)(c) with WIS. STAT. § 20.001(3)(a), (b). This allowed the attorney general to warehouse and spend moneys from WIS. STAT. § 20.455(3)(g) indefinitely.*

STAT. § 20.001(2)(d) ("'Segregated fund revenues' . . . consist of revenues which, by law, are deposited into funds other than the general fund and are available for the purposes for which such funds are created.") The environmental fund is an example of a segregated fund, in which the legislature deposits certain environmental enforcement settlements. This litigation focuses on deposits to the "general fund."

¶37     Money deposited into the treasury's "general fund" is "credited" based upon the money's origin. Money leaving the treasury is routed in accordance with its "appropriation." Relevant to this case, ch. 20 routes incoming revenues into either the "general purpose revenues" of the general fund or the "program revenues" of the general fund. WIS. STAT. § 20.001(2). Chapter 20 then appropriates general purpose revenues and program revenues to state agencies. At the broadest level of organization, each agency falls under a "functional area." See WIS. STAT. § 20.003(3)(a) ("[A]ll state agencies shall be arranged within functional areas. Each functional area is assigned a subchapter and each state agency shall be assigned a section within that subchapter."). Within each agency's section, a subsection constitutes an agency "program," and each paragraph of a "program" constitutes an "appropriation." WIS. STAT. § 20.003(3)(a). Finally, under each "program," ch. 20 classifies an "appropriation" by its topic-specific revenue source. WIS. STAT. § 20.003(3)(b) ("[A]ll appropriations are identified according to their source of funds, as defined in s. 20.001 . . . .").

¶38     For example, WIS. STAT. § 20.455, titled "Justice, department of," constitutes a "section" of ch. 20 allocating revenue to the DOJ for four "programs," including "legal services," § 20.455(1); "law enforcement services," § 20.455(2); "administrative services," § 20.455(3); and "victims and witnesses," § 20.455(5). Each of the DOJ's "programs" takes an appropriation from the "general purpose revenue" of the general fund for "general administration" and "program operations," denoted by paragraph letters (a) to (fz). WIS. STAT. § 20.003(3)(b)1. Each DOJ "program" also takes subject-matter-specific appropriations from the "program revenue" of the general fund, denoted by paragraph letters (g) to (jz) and (L) to (pz). § 20.003(3)(b)2.

¶39     This interbranch dispute centers on the difference between "general purpose revenues" and "program revenues." "General purpose revenues" are not earmarked for a particular purpose. "General purpose revenues" come from sources

such as "general taxes" and "miscellaneous receipts." WIS. STAT. § 20.001(2)(a).[8] They may also include "revenues collected by state agencies which are paid into a specific fund, lose their identity and are then available for appropriation by the legislature," usually through the biennial budget process. Id. Typically, these appropriations are capped by "the amounts in the schedule," that is, the state budget, defined under WIS. STAT. § 20.005. The legislature allocates "general purpose revenues" in more detail through the legislative budget process or other acts of appropriation.

¶40    "Program revenues," on the other hand, are moneys "paid into the general fund," which the legislature has already assigned "by law to an appropriation to finance a specified program or state agency." WIS. STAT. § 20.001(2)(b).[9] When "program revenues" enter the general fund, they leave

---

[8] WISCONSIN STAT. § 20.001(2)(a) provides:

**(a)** General purpose revenues. "General purpose revenues" consist of general taxes, miscellaneous receipts and revenues collected by state agencies which are paid into a specific fund, lose their identity, and are then available for appropriation by the legislature. In this chapter, "general purpose revenues" refers to general purpose revenues in the general fund. General purpose revenues are identified by the abbreviation "GPR" in s. 20.005. They shall be deposited pursuant to s. 20.906.

[9] WISCONSIN STAT. § 20.001(2)(b) provides:

**(b)** Program revenues. "Program revenues" consist of revenues which are paid into the general fund and are credited by law to an appropriation to finance a specified program or state agency. In this chapter, "program revenues" refers to program revenues in the general fund. Program revenues are identified by the abbreviation "PR" in s. 20.005. For any program revenue appropriation which is limited to the amounts in the schedule, no expenditures may be made exceeding the amounts in the schedule, except as provided in ss. 13.101 and 16.515, regardless of the amounts credited to that appropriation account. They shall be deposited pursuant to s. 20.906. Notwithstanding any other provision of this chapter, program revenues shall be used to reimburse the general fund for payments

*without any new action by the legislature beyond their appropriation during the budgetary process. Agencies themselves, coordinating with the Department of Administration (DOA), "credit" "program revenues" to a particular "program appropriation" already made by law, such as* WIS. STAT. § 20.455(1)(hm),[10] *a DOJ program appropriation for victims owed restitution.*

¶41     *Central to this litigation, a default rule of* WIS. STAT. § 20.906(1) *requires that "[a]ll moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law." The legislature maintains the "settlement funds" collected by the attorney general are general purpose revenues, which the legislature controls through its budgeting and appropriations process. The attorney general considers the settlement funds to be program revenues, which the legislature has already appropriated by law, allowing the DOJ to credit them to a specific program appropriation for the DOJ's own use.*

### C. HISTORY OF ENACTMENTS

¶42     *Prior to 2010, the legislature became aware of the attorney general "crediting" putatively "discretionary" settlement funds to the DOJ's program appropriation,* WIS. STAT. § 20.455(3)(g). (R. 108:14.) *A Legislative Audit Bureau report at the time noted that "[p]ast efforts to enhance or retain legislative oversight over [the use of settlement funds] have been limited by vetoes and by DOJ's*

---

*transferred under the appropriations made in s. 20.865 for the purposes of program revenue appropriations.*

[10] WISCONSIN STAT. § 20.455(1)(hm) *provides: "There is appropriated to the department of justice for the following programs:*

*(1)* LEGAL SERVICES.

        . . . .

*(hm)*     *Restitution. All moneys received by the department to provide restitution to victims when ordered by the court as the result of prosecutions under s. 49.49 and chs. 100, 133, 281 to 285 and 289 to 299 and under a federal antitrust law for the purpose of providing restitution to victims of the violation when ordered by the court.*

incomplete compliance with a statutory reporting requirement." *Letter Report, Settlement and Judgment Awards, Legislative Audit Bureau, Madison, Wis. (Apr. 2010) (R. 108:14.)* That report documented the attorney general having credited tens of millions of dollars to the DOJ.

¶43　　In 2017, the legislature passed Wis. Act 59, § 1672g, a provision of the 2017 budget act, to regulate this practice. Act 59 created WIS. STAT. § 165.10, which required, "before the attorney general may expend settlement funds under [section] 20.455(3)(g) that are not committed under the terms of the settlement the attorney general shall submit to the joint committee on finance a proposed plan for the expenditure of the funds." *2017 Wis. Act 59, § 1672g.*[11] The attorney general evaded that requirement, prompting the legislature to amend WIS. STAT. § 165.10 to read: "The attorney general shall deposit all settlement funds into the general fund." *2017 Wis. Act 369, § 27.*[12]

---

[11] *2017 Wis. Act 59, § 1672g provides: "165.10 of the statutes is created to read:*

**165.10 Limits on expenditure of discretionary settlement funds.** *Notwithstanding s. 20.455 (3), before the attorney general may expend settlement funds under s. 20.455 (3) (g) that are not committed under the terms of the settlement, the attorney general shall submit to the joint committee on finance a proposed plan for the expenditure of the funds. If the cochairpersons of the committee do not notify the attorney general within 14 working days after the submittal that the committee has scheduled a meeting for the purpose of reviewing the proposed plan, the attorney general may expend the funds to implement the proposed plan. If within 14 working days after the submittal, the cochairpersons of the committee notify the attorney general that the committee has scheduled a meeting for the purpose of reviewing the proposed plan, the attorney general may expend the funds only to implement the plan as approved by the committee.*

[12] *2017 Wis. Act 369, § 27 provides: "165.10 of the statutes, as created by 2017 Wisconsin Act 59, is amended to read:*

**165.10 ~~Limits on expenditure~~ Deposit of ~~discretionary~~ settlement funds.** ~~Notwithstanding s. 20.455 (3), before the~~ The attorney general ~~may expend~~ shall deposit all settlement funds ~~under s. 20.455 (3) (g) that are not committed under the terms of the~~ settlement, ~~the attorney general shall submit to the joint committee on finance a proposed plan for the expenditure of the funds. If the cochairpersons of the committee do not~~

¶44     *Act 369 imposed two additional restrictions. First, the legislature amended* WIS. STAT. *§ 20.455(3)(g), the program appropriation where attorneys general had been crediting "discretionary" settlement funds, limiting that appropriation to "the amounts in the schedule . . . ." 2017 Wis. Act 369, § 21.*[13] *That language incorporates by reference "the schedule" of appropriations under the state's budget, found in* WIS. STAT. *§ 20.005, which effectively capped* WIS. STAT. *§ 20.455(3)(g), bringing it in line with DOJ "general purpose revenue" appropriations, nearly all of which are controlled by "the schedule." See, e.g.,* WIS. STAT. *§ 20.455(3)(a) ("The amounts in the schedule for the general administration of the department of justice.") (emphasis added).*

¶45     *Second, Act 369 clawed back moneys the attorney general had already credited to* WIS. STAT. *§ 20.455(3)(g). Section 103 of Act 369 provides, "from the appropriation account under s. 20.455 (3) (g), on the effective date of this subsection, there is lapsed to the general fund the unencumbered balance of any settlement funds in that appropriation account, as determined by the attorney*

---

*~~notify the attorney general within 14 working days after the submittal that the committee has scheduled a meeting for the purpose of reviewing the proposed plan, the attorney general may expend the funds to implement the proposed plan. If, within 14 working days after the submittal, the cochairpersons of the committee notify the attorney general that the committee has scheduled a meeting for the purpose of reviewing the proposed plan, the attorney general may expend the funds only to implement the plan as approved by the committee~~* <u>into the general fund</u>.

[13] *2017 Wisconsin Act 369, § 21 provides: "20.455 (3) (g) of the statutes is amended to read:*

*20.455 (3) (g) Gifts, grants and proceeds.* <u>*The amounts in the schedule to carry out the purposes for which gifts and grants are made and collected.*</u> *All moneys received from gifts and grants and all proceeds from services, conferences, and sales of publications and promotional materials* ~~*to carry out the purposes for which made or collected*~~*, except as provided in sub. (2) (gm) and (gp) and to transfer to s. 20.505 (1) (kg), at the discretion of the attorney general, an amount not to exceed $98,300 annually,* <u>*shall be credited to this appropriation account*</u>.

general." *2017 Wis. Act 369, § 103(1).*[14] *The attorney general at the time determined that all funds he had credited to WIS. STAT. § 20.455(3)(g) were in fact "encumbered,"*[15] *so he returned none.*[16] *(R. 108:7.) Instead, the attorney general moved the moneys to a "nonbudgetary account," pending resolution of this dispute. (R. 108:7; 88:15, 18)*

¶46    *The sums of money at stake are substantial. As of January 10, 2022, the DOJ had credited nearly $33 million in that account. (R. 108:11; 89:5.) Additionally, the DOJ holds three quarters of a million dollars of settlement funds in its WIS. STAT. § 20.455(1)(gh) program appropriation for the costs of*

---

[14] *2017 Wisconsin Act 369, § 103(1) provides:* "**Fiscal changes.**

*(1) SETTLEMENT FUNDS. Notwithstanding s. 20.001 (3) (c), from the appropriation account under s. 20.455 (3) (g), on the effective date of this subsection, there is lapsed to the general fund the unencumbered balance of any settlement funds in that appropriation account, as determined by the attorney general.*

[15]  *The Wisconsin Statutes define "encumbrance." See WIS. STAT. § 16.52 et seq. "Encumbrances" are moneys tied up by an agency's commitment to pay them out of its accounts, through contracts, orders, or other obligations with outside vendors. See WIS. STAT. § 16.52(1) ("The department [of administration] shall keep in its office separate accounts of the revenues and funds of the state . . . and also of all encumbrances, expenditures, disbursements and investments thereof . . . ."); see also WIS. STAT. § 16.52(6)(a) ("[A]ll purchase orders, contracts, or printing orders for any agency . . . shall, before any liability is incurred thereon, be submitted to the secretary [of administration] for his or her approval as to legality of purpose and sufficiency of appropriated and allotted funds therefor . . . Upon such approval, the secretary [of administration] shall immediately encumber all contracts or orders, and indicate the fiscal year to which they are chargeable.").*

[16] *The attorney general deemed contractual earmarks for his own agency, which he had negotiated as part of settlement agreements, to be "encumbrances." (R. 90:3.) When the legislature directed the attorney general through Act 369 to return the money, the attorney general maintained the money was already promised to a "third party" or "encumbered"—to himself.*

*investigation and attorney fees.*[17] *(R. 108:11.) Because the attorney general has siphoned settlement funds and spent them out of DOJ accounts for decades, the record does not reflect the scope of revenues the attorney general amassed over time.*[18]

### D. PROCEDURAL HISTORY

¶47    *After Attorney General Kaul took office in 2019, the legislature's Joint Committee on Finance asked why Kaul had not complied with Act 369. (Supp.App'x.60) Kaul responded that certain portions of settlements fall under specific program appropriations, such as line items for victim restitution and attorney fees. Because, according to Kaul, those appropriations would conflict with the* WIS. STAT. *§ 165.10 requirement to deposit all "settlement funds" into the general fund, Kaul argued § 165.10 could not apply to those appropriations. Kaul also questioned whether voluntary settlements, as opposed to consent judgments, constitute "settlements" under § 165.10, and whether consent judgments themselves are "settlements."*[19] *(Supp.App'x.67–68.) Finally, Kaul claimed that no*

_____

[17] WISCONSIN STAT. *§ 20.455(1)(gh) provides: "There is appropriated to the department of justice for the following programs:*

**(1)** LEGAL SERVICES.

    . . . .

**(gh)**  *Investigation and prosecution. Moneys received under ss. 23.22 (9) (c), 49.49 (6), 100.263, 133.16, 281.98 (2), 283.91 (5), 289.96 (3) (b), 291.97 (3), 292.99 (2), 293.87 (4) (b), 295.19 (3) (b) 2., 295.79 (4) (b), and 299.97 (2), for the expenses of investigation and prosecution of violations, including attorney fees.*

[18] *The attorney general refused during discovery to produce a forensic accounting beyond a single, partial spreadsheet of funds. (R. 88:17–19.) The attorney general claimed the "burden" of tracking tens of millions of dollars of the People's money was "disproportionate to the needs of the case." (R. 88:17–18.) Given the range of DOJ accounts Kaul has cited throughout this litigation, a record of those accounts was well within "the needs of the case." It is also not clear how an agency flush with tens of millions of dollars in extra cash is unable to keep track of it.*

[19] *Whether § 165.10 applies to voluntary settlements and consent judgments impacts substantial sums of revenue. A DOJ record suggests that in a single voluntary*

*language in § 165.10 specifically required him to credit settlement funds as "general purpose revenues" instead of "program revenues." (Supp.App'x.79.) Accordingly, Kaul concluded he could continue crediting settlement funds to the DOJ's WIS. STAT. § 20.455(3)(g) program revenue appropriation. (Supp.App'x.79.)*

*¶48    The legislature responded by noting that WIS. STAT. § 165.10 directs only "the attorney general" to act and therefore does not apply to "settlement funds" designated for third parties like victims, state agencies, other states, or the federal government. (Supp.App'x.71.) The legislature also maintained that § 165.10 plainly applies to all "settlements," including voluntary agreements and consent judgments. (Supp.App'x.71–72.)*

*¶49    With no change in Kaul's position forthcoming, the legislature filed this lawsuit on June 3, 2021, seeking a declaration that 2017 Wis. Act 369 § 27, codified at WIS. STAT. § 165.10, requires the attorney general to deposit "all" settlement funds into the general fund, including those obtained from voluntary settlements and consent judgments. (R. 4:30–31.) (emphasis original). The legislature further asked the circuit court to declare the attorney general does not comply with § 165.10 by crediting settlement funds to the DOJ's WIS. STAT. § 20.455(3)(g) program appropriation account. (R. 4:31.) Finally, the legislature requested the court compel Kaul to return all "settlement funds" to the general purpose revenues of the general fund and enjoin him from crediting any more funds to WIS. STAT. § 20.455(3)(g). (R. 4:31.)*

*¶50    The parties filed cross-motions for summary judgment, and the circuit court granted summary judgment in Kaul's favor. The court agreed with the legislature and ruled that WIS. STAT. § 165.10 requires the attorney general to "deposit" "settlement funds" into the general fund. (R. 153:65.) The court further ruled, however, that since § 165.10 does not mention the "general purpose revenue" of the general fund, the default crediting rule of WIS. STAT. § 20.906(1) controls. (R. 153:65–66.) Because WIS. STAT. § 20.906(1) permits the attorney general to credit moneys to the DOJ's existing program appropriations, the court concluded that WIS. STAT. § 165.10 does not apply to all "settlement funds." (R. 153:57–59.) The court declined to decide whether WIS. STAT. § 20.455(3)(g)*

---

*settlement, the Department of Justice obtained nearly $3.3 million from Apple in 2021. (R. 91:2.) The DOJ also obtained roughly $8.6 million from Wells Fargo in what appears to be a voluntary agreement in 2019. (R. 91:4; 16:2–17.)*

*contemplates "settlement funds," determining the legislature had not sought a declaration on that issue.[20] (R. 153:65–67.)*

*¶51     In a published opinion, the court of appeals reversed. The court held that WIS. STAT. § 165.10 "when read in conjunction with related statutes (including WIS. STAT. § 20.906(1))" requires the attorney general to deposit "'all settlement funds' (as defined [by § 165.10]; not including those bound to third-parties)" "into the general fund." Kaul, 414 Wis. 2d 633, ¶55 (citation modified). Additionally, the court held that "[b]ecause the legislature has not otherwise specifically provided by law separate accounts or designations," WIS. STAT. § 20.906(1) requires the attorney general to "deposit[]" all settlement funds "into the general purpose revenues of the general fund." Id. (emphasis added).*

*¶52     We affirm the court of appeals. We hold that WIS. STAT. § 165.10 first requires the attorney general to deposit all settlement funds into the general fund. The term "settlement funds" in § 165.10 is general and includes both voluntary and court-ordered settlements, through consent judgments or voluntary agreements. After the attorney general has "deposited" settlement funds into the general fund, WIS. STAT. § 20.906(1) requires all settlement funds to be credited to the general purpose revenues of the general fund, "unless otherwise specifically provided by law."*

*¶53     With respect to program revenues, we hold that WIS. STAT. § 165.10 does not apply to any portion of a settlement not designated for the attorney general's control, such as restitution for victims, and moneys paid to other states, state agencies, the federal government, or another third party. As such, WIS. STAT. § 20.455(1)(hm), a DOJ program appropriation for victim restitution, does not include "settlement funds" controlled by WIS. STAT. § 165.10.*

*¶54     With respect to WIS. STAT. § 20.455(1)(gh), we hold that the DOJ may credit certain settlement funds for the cost of investigation and attorney fees to its § 20.455(1)(gh) program appropriation—but only those specifically enumerated in that statute, which incorporates by reference certain enforcement actions mentioned elsewhere in the Wisconsin Statutes.*

---

[20] *The circuit court incorrectly concluded the legislature failed to raise the issue of whether WIS. STAT. § 20.455(3)(g) contemplates "settlement funds." The legislature plainly sought a ruling on that question. (R. 4:31.)*

¶55     Finally, we hold that WIS. STAT. § 20.455(3)(g) does not encompass "settlement funds" under WIS. STAT. § 20.906(1). The attorney general may not credit "settlement funds" to that account. Going forward, attorneys general are enjoined from crediting any "settlement funds" to WIS. STAT. § 20.455(3)(g).

## II.  STANDARD OF REVIEW

¶56     "The interpretation and application of statutes present questions of law that we review independently." *Wis. Prop. Taxpayers, Inc. v. Town of Buchanan*, 2023 WI 58, ¶9, 408 Wis. 2d 287, 992 N.W.2d 100. '

## III.  ANALYSIS

¶57     The text of the Wisconsin Statutes resolves this appeal. "We assume that the legislature's intent is expressed in the statutory language." *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "[W]e have repeatedly held that statutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.*, ¶45 (internal quotation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* (citations omitted). The Wisconsin budget statutes are comprised almost entirely of "technical" and "specially-defined words." *See id.*

### A.  Wisconsin Stat. § 165.10

¶58     WISCONSIN STAT. § 165.10 says: "The attorney general shall deposit all settlement funds into the general fund." We presume "shall" creates a mandatory duty. *State v. Cox*, 2018 WI 67, ¶11, 382 Wis. 2d 338, 913 N.W.2d 780. WISCONSIN STAT. § 165.10 accordingly requires "the attorney general" to "deposit" (not credit) "all settlement funds" (not some settlement funds) "into the general fund" (not a segregated fund).[21]

---

[21] *The legislature elsewhere requires some settlement funds to be credited to segregated funds, such as the environmental fund. See, e.g.,* WIS. STAT. § 283.87(1). *The language of* WIS. STAT. § 165.10, *however, sweeps broadly: "The attorney general shall deposit all settlement funds into the general fund." To the extent § 165.10 conflicts with a more specific "depositing" statute, the more specific statute controls. Townsend v. ChartSwap, LLC, 2021 WI 86, ¶25, 399 Wis. 2d 599, 967 N.W.2d 21 (recognizing this court applies the general-specific canon "to statutes . . . in which a general authorization and a more limited, specific authorization exist side-by-side."). Additionally, § 165.10 does*

¶59     As a preliminary matter, the parties agree WIS. STAT. § 165.10 cannot control any part of "settlement funds" designated for third parties. We concur. Section 165.10 imposes a duty on "the attorney general" alone and therefore governs only moneys already designated by the Wisconsin Statutes as under the attorney general's control. WISCONSIN STAT. § 165.10 does not authorize the attorney general to deposit, credit, spend, or do anything else with money belonging to others. For the same reason, the attorney general may not credit any settlement funds to the DOJ unless the legislature has appropriated them to the DOJ; funds the legislature has not appropriated to the DOJ belong to the People of Wisconsin. Any clause of a settlement agreement purporting to give the attorney general "discretion" to appropriate the People's revenues to himself without statutory authorization would violate Article VIII, Section 2 and Article VI, Section 3 of the Wisconsin Constitution. Only the legislature may give the attorney general control over revenue.

¶60     Read otherwise, § 165.10 would create conflicts between statutory provisions. We read the Wisconsin Statutes in harmony. Eau Claire Cnty. Dep't Hum. Servs. v. S.E., 2021 WI 56, ¶30, 960 N.W.2d 391, 402 (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 180 (2012)) (citations omitted). To illustrate, WIS. STAT. § 25.46(1)(u) provides for settlements with the DNR, a third party, to be deposited into the environmental fund. Section 165.10 cannot reallocate those moneys to the general fund without creating an irreconcilable conflict with § 25.46(1)(u). We also read the Wisconsin Statutes to avoid constitutional collisions. Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc., 2017 WI 71, ¶21, 376 Wis. 2d 528, 898 N.W.2d 70 (citing SCALIA & GARNER, supra, at 247–51)) (citations omitted). Accordingly, WIS. STAT. § 165.10 cannot overrule the United States Constitution by reallocating funds assigned to the federal government in multi-party litigation. At bottom, Section 165.10 does not apply to any "settlement funds" not controlled by the "attorney general." Accordingly, § 165.10 does not apply to restitution belonging to victims under WIS. STAT. § 20.455(1)(hm).

¶61     WISCONSIN STAT. § 165.10 applies to "all settlement funds" controlled by the attorney general. (emphasis added). That language is ordinary, general, and without limitation. All means all. See Kalal, 271 Wis. 2d 633, ¶45. "[G]eneral words (like all words, general or not) are to be accorded their full and

---

not apply to funds belonging to third parties, such as the segregated environmental fund revenues that belong to the Department of Natural Resources.

*fair scope. They are not to be arbitrarily limited." Benson v. City of Madison, 2017 WI 65, ¶25, 376 Wis. 2d 35, 897 N.W.2d 16 (quoting SCALIA & GARNER, supra, at 101). Kaul has questioned whether "settlement funds" applies to voluntary settlements pre-suit, or to consent judgments submitted with a complaint, or to a settlement reached after a complaint but before judgment. The legislature accordingly asks us to declare that "all settlement funds" includes moneys arising from all of the aforementioned settlements. It does. We hold that "all settlement funds" means all settlement funds.*

*¶62    Finally, WIS. STAT. § 165.10 provides that "all settlement funds" are to be deposited in the "general fund," not a segregated fund. As explained above, the "general fund" comprises "[a]ll moneys in the state treasury not specifically designated in any statute as belonging to any other funds." WIS. STAT. § 25.20. Chapters 24 and 25 "specifically designate" numerous purpose-specific segregated funds, such as the environmental fund and the Common School Fund. See, e.g., WIS. STAT. §§ 25.46, 24.76. In contrast, WIS. STAT. § 165.10 requires "settlement funds" be deposited in the general fund: "The attorney general shall deposit all settlement funds into the general fund." Because that language is plain, the analysis ends with the text. Kalal, 271 Wis. 2d 633, ¶45.*

### B. Wisconsin Stat. § 20.906(1)

*¶63    Once the attorney general has deposited all settlement funds into the general fund, the question remains where to credit them. The "general fund" contains both "general purpose revenues" and "program revenues." WIS. STAT. §§ 20.001(2)(a), 20.001(2)(b). WISCONSIN STAT. § 20.906(1), titled "Receipts and deposits of money," provides the default rule: "All moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law." The word "shall" creates a mandate. Cox, 382 Wis. 2d 338, ¶11. WISCONSIN STAT. § 20.906(1) requires the attorney general to credit "all settlement funds" to the general purpose revenues of the general fund unless another statute "specifically" provides another home.[22]*

---

[22] *In its discussion of WIS. STAT. § 20.906(1), the court of appeals indicated that § 20.906(1) requires the attorney general to "deposit" settlement funds into the general purpose revenues of the general fund. Kaul, 414 Wis. 2d 633, ¶34. The text of § 20.906(1) addresses "crediting" moneys, not "depositing" them: "All moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law." Under the budget statutes, "deposit" means something different than "credit." See State ex rel. DNR v. Wis. Ct. of Appeals, Dist. IV, 2018 WI*

¶64    *The exception under WIS. STAT. § 20.906(1) is narrow. WISCONSIN STAT. § 20.906(1) requires a "specific provision" to trigger an exception to § 20.906(1)'s crediting rule (citation modified). The Wisconsin Statutes contain only one exception to the § 20.906(1) default rule for crediting "settlement funds": the "[m]oneys received under [certain other statutes] for the expenses of investigation and prosecution of violations, including attorney fees," in WIS. STAT. § 20.455(1)(gh).*

## C.  Wisconsin Stat. § 20.455(1)(gh)

¶65    *The court of appeals held, and the legislature maintains before this court, that no provision of the Wisconsin Statutes triggers the exception to the crediting rule under WIS. STAT. § 20.906(1). See Kaul, 414 Wis. 2d 633, ¶40. That is incorrect, but so are Kaul's arguments. First, WIS. STAT. § 165.10 does not itself provide an exception to the default rule. Second, as explained above, WIS. STAT. § 165.10 does not apply to settlement moneys designated under WIS. STAT. § 20.455(1)(hm) for victim restitution. Third, WIS. STAT. § 20.455(3)(g)—where attorneys general have parked tens of millions of dollars of the People's revenues—does not provide an exception to the default crediting rule either. Only WIS. STAT. § 20.455(1)(gh), the DOJ program appropriation for the costs of "investigations and prosecutions" and "attorney fees," provides an exception to the crediting rule under § 20.906(1). Crucially, however, the DOJ may not credit "settlement funds" under that statute unless the moneys are received under one of the statutes enumerated in WIS. STAT. § 20.455(1)(gh) "for the expenses of investigation and prosecution of violations."*

## D.  Wisconsin Stat. § 165.10 DOES NOT PROVIDE AN EXCEPTION.

¶66    *As a threshold matter, WIS. STAT. § 165.10 does not trigger the exception in WIS. STAT. § 20.906(1). WISCONSIN STAT. § 165.10 says nothing about "crediting" at all, nor does it incorporate by reference a specific ch. 20 program appropriation to which the attorney general may credit "settlement funds." This is the best evidence that all settlement funds deposited into the general fund under § 165.10 are subject to the default rule in WIS. STAT. § 20.906(1) requiring such funds to be "credited to the general purpose revenues of the general fund." "We generally presume that when the legislature enacts a statute, it is fully aware of the existing laws." Heritage Farms, Inc. v. Markel Ins. Co., 2009 WI 27,*

---

*25, ¶28, 380 Wis. 2d 354, 909 N.W.2d 114 (quoting SCALIA & GARNER, supra, at 170 ("[A] material variation in terms suggests a variation in meaning.")).*

*¶40, 316 Wis. 2d 47, 762 N.W.2d 652 (citations omitted). The legislature knew when it enacted WIS. STAT. § 165.10 that WIS. STAT. § 20.906(1) would control the crediting of "settlement funds" unless WIS. STAT. § 165.10 said more. WISCONSIN STAT. § 165.10 does not say more, so the general rule of WIS. STAT. § 20.906(1) controls.*

*¶67 If there were an exception to the general rule under WIS. STAT. § 20.906(1), WIS. STAT. § 165.10 would be a natural place to find it. Chapter 165 defines the substantive duties and authority of the officers of the DOJ. Numerous other enforcement authorizations for other agencies "specifically provide[]" an exception to the WIS. STAT. § 20.906(1) default rule by expressly cross-referencing an agency program appropriation in ch. 20. For example, WISCONSIN. STAT. § 20.455(1)(gh) lists thirteen different agency provisions governing enforcement actions. Those statutes authorize the DOJ to represent the respective agency, and direct the costs of investigation and attorney fees to be credited to the DOJ's WIS. STAT. § 20.455(1)(gh) program appropriation.*

*¶68 To illustrate, WIS. STAT. § 49.49(6) authorizes a "court" adjudicating medical assistance fraud to "award the department of justice the reasonable and necessary costs of investigation, an amount reasonably necessary to remedy the harmful effects of the violation and the reasonable and necessary expenses of prosecution, including attorney fees." The provision bifurcates the crediting of that award. The "amount reasonably necessary to remedy the harmful effects of the violation" is credited to the general purpose revenues of the general fund. WIS. STAT. § 49.49(6) ("The department of justice shall deposit in the state treasury for deposit in the general fund all moneys that the court awards to the department or the state under this subsection."). With no more specific crediting instruction, that language triggers the default rule of WIS. STAT. § 20.906(1). WISCONSIN STAT. § 49.49(6) also carves off a portion of the award to be credited to "program revenues": "[t]he costs of investigation and the expenses of prosecution, including attorney fees, shall be credited to the appropriation account under s. 20.455 (1) (gh)," for the DOJ. That language triggers the exception under WIS. STAT. § 20.906(1).*

*¶69 Twelve other agency provisions listed in WIS. STAT. § 20.455(1)(gh) work the same way, assigning moneys to § 20.455(1)(gh). When the legislature wants to trigger the exception to WIS. STAT. § 20.906(1), it "knows how." See State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev., 2021 WI 89, ¶38, 399 Wis. 2d 696, 967 N.W.2d 460.*

*E. Wisconsin Stat. § 20.455(1)(gh) PROVIDES ONLY ONE EXCEPTION.*

¶70 WISCONSIN STAT. § 20.455(1)(gh) is the only DOJ program appropriation that appropriates any "settlement funds" to the DOJ. WISCONSIN STAT. § 20.455(1)(gh) appropriates to the DOJ "[m]oneys received under ss. 23.22 (9) (c), 49.49 (6), 100.263, 133.16, 281.98 (2), 283.91 (5), 289.96 (3) (b), 291.97 (3), 292.99 (2), 293.87 (4) (b), 295.19 (3) (b) 2., 295.79 (4) (b), and 299.97 (2), for the expenses of investigation and prosecution of violations, including attorney fees." The specificity of thirteen enumerated enforcement authorities triggers the exception to the general crediting rule in WIS. STAT. § 20.906(1). WISCONSIN STAT. § 20.455(1)(gh), however, does not give the attorney general any authority to credit "settlement funds" in general to it, irrespective of what labels he may assign them. WISCONSIN STAT. § 20.455(1)(gh) is limited to the specific authorities enumerated therein. That list is exclusive. See SCALIA & GARNER, supra, at 107 ("The expression of one thing implies the exclusion of others . . . .").

¶71 The list in WIS. STAT. § 20.455(1)(gh) is further limited to awards by courts. See, e.g., WIS. STAT. § 23.22(9)(c) ("the court may award"); WIS. STAT. § 49.49(6) ("the court may award"). WISCONSIN STAT. § 20.455(1)(gh) therefore governs only "settlement funds" arising from a consent judgment. The attorney general may not credit awards from any private agreement to § 20.455(1)(gh). At one point, the attorney general had credited close to three quarters of a million dollars to the § 20.455(1)(gh) program appropriation. The record is unclear as to which enforcement authorities the attorney general used to obtain each of those awards. The law precludes the attorney general from crediting any settlement funds to § 20.455(1)(gh) unless they arise from (1) an enforcement authority specifically identified in § 20.455(1)(gh), and (2) a consent judgment.

F. *Wisconsin Stat. § 20.455(3)(g) DOES NOT PROVIDE AN EXCEPTION TO THE GENERAL CREDITING RULE.*

¶72 For decades, attorneys general have credited putatively "discretionary" "settlement funds" to the DOJ program appropriation for "Gifts, grants and proceeds," WIS. STAT. § 20.455(3)(g). These funds represent the center of this controversy, totaling as much as $30 million the DOJ refuses to return. Characterizing such funds as "discretionary" lacks any legal basis. The attorney general has no "discretion" over any moneys the legislature has not expressly appropriated to the DOJ by law.[23] The legislature's powers governing the treasury

---

[23] Long ago, former attorneys general invented "discretionary" settlement funds by drafting private settlement agreements with other states, the federal government, and major corporations—apparently without the knowledge or consent of the People. (R. 16:30.) To credit those "discretionary" settlement funds to themselves, attorneys general

*are plenary. WIS. CONST. ART. VI, § 3 ("The powers, duties and compensation of the treasurer and attorney general shall be prescribed by law."); WIS. CONST. ART. VIII, § 2 ("No money shall be paid out of the treasury except in pursuance of an appropriation by law.").*

¶73     *WISCONSIN STAT. § 20.455(3)(g) for "Gifts, grants and proceeds" does not authorize the attorney general to credit "discretionary" or any other kind of settlement funds to that appropriation. The text of § 20.455(3)(g) is plain:*

> *The amounts in the schedule to carry out the purposes for which gifts and grants are made and collected. All moneys received from gifts and grants and all proceeds from services, conferences, and sales of publications and promotional materials, except as provided in sub. (2) (gm) and (gp) and to transfer to s. 20.505 (1) (kg), at the discretion of the attorney general, an amount not to exceed $98,300 annually, shall be credited to this appropriation account.[24]*

*The phrase "settlement funds" does not appear in that provision, nor does that provision incorporate by reference WIS. STAT. § 165.10, or any another provision covering "settlement funds."*

¶74     *The legislature requires "specific[]" language to trigger the exception to the WIS. STAT. § 20.906(1) default rule (emphasis added). Otherwise, "[a]ll moneys paid into the treasury shall be credited to the general purpose revenues of the general fund." WISCONSIN STAT. § 20.906(1). WISCONSIN STAT. § 20.455(3)(g) does not mention "settlement funds," and Kaul's argument fails on that ground alone. Other program appropriations in ch. 20 do. WISCONSIN STAT. § 20.115(8)(gm) appropriates to the Department of Agriculture, Trade and Consumer Protection "[a]ll moneys received by the department pursuant to a court*

---

*then carved off subsections of the WIS. STAT. § 20.455(3)(g) appropriation account, titling two subsidiary accounts (1) "Consumer Protection – Discretionary" and (2) "Attorney General – Discretionary." (R. 97:69.) Attorneys general have no constitutional or other authority to (1) assign themselves "discretion" over state funds through private agreements; (2) credit settlement funds to WIS. STAT. § 20.455(3)(g); or (3) create subsidiary accounts within the § 20.455(3)(g) appropriation.*

[24] *The "except as provided" clause of WIS. STAT. § 20.455(3)(g) creates an exception to the general category of revenues in § 20.455(3)(g). That exception is irrelevant to our analysis.*

*order under s. 93.20 (2) as reimbursement of enforcement costs, or as part of a settlement agreement or deferred prosecution agreement that includes amounts for enforcement costs, shall be credited to this appropriation" (emphasis added).*

¶75 *Because* WIS. STAT. *§ 20.455(3)(g) does not mention "settlement funds," Kaul argues that "settlement funds" fall under "proceeds from services" in § 20.455(3)(g). That is incorrect. To state the obvious, "settlement funds" and "proceeds from services" are different terms. See State ex rel. DNR v. Wis. Ct. of Appeals, Dist. IV, 2018 WI 25, ¶28, 380 Wis. 2d 354, 909 N.W.2d 114 (quoting* SCALIA & GARNER, *supra, at 170 ("[A] material variation in terms suggests a variation in meaning.")). Partitioning "proceeds from services" and mining "settlement funds" from "proceeds" and "legal services" from "services" does not save Kaul's argument.* WISCONSIN STAT. *§ 20.455(3)(g) doesn't mention "settlement proceeds" or "legal services" either. It says "proceeds from services." In order for "settlement funds" to be credited to the appropriation account under § 20.455(3)(g),* WIS. STAT. *§ 20.906(1) demands "settlement funds" to be "specifically provided" under § 20.455(3)(g), but "settlement funds" appears nowhere in that statute.*

¶76 *The Wisconsin Statutes establish that "settlement proceeds" and "legal services" mean something different than "settlement funds." See* WIS. STAT. *§ 165.25 ("legal services") and* WIS. STAT. *§ 165.12(2)(b) ("settlement proceeds"); see also* WIS. STAT. *§ 20.455(1)(km). Those terms cannot be conflated with "settlement funds" as used elsewhere in the statutory corpus. See DNR, 380 Wis. 2d 354, ¶28, (quoting* SCALIA & GARNER, *supra, at 170 ("[A] material variation in terms suggests a variation in meaning.")).*

¶77 *Reading "proceeds from services" to encompass all "settlement funds" disregards the specificity with which the legislature writes its ch. 20 program appropriations.[25]* WISCONSIN STAT. *§ 20.455(1)(gh), the department's program appropriation for the "expenses of investigation" and "attorney fees," painstakingly enumerates every enforcement authority that appropriation encompasses:*

*Moneys received under ss. 23.22 (9) (c), 49.49 (6), 100.263, 133.16, 281.98 (2), 283.91 (5), 289.96 (3) (b), 291.97 (3), 292.99 (2), 293.87*

---

[25] *Asked at oral argument to identify any moneys resulting from a DOJ enforcement action that* WIS. STAT. *§ 20.455(3)(g) does not encompass, Kaul could offer none.*

*(4) (b), 295.19 (3) (b) 2., 295.79 (4) (b), and 299.97 (2), for the
expenses of investigation and prosecution of violations, including
attorney fees.*

In comparison, WISCONSIN STAT. § 20.455(3)(g) for "gifts, grant and proceeds,"
does not incorporate any of those enforcement authorities or the settlement awards
arising from them.

¶78     WISCONSIN STAT. § 20.455(1)(gh) illustrates how the legislature
confers appropriation authority. We would expect WIS. STAT. § 165.10 to mention
WIS. STAT. § 20.455(3)(g) if the legislature meant to credit settlement funds there.
Each of the provisions WIS. STAT. § 20.455(1)(gh) identifies cross-references
§ 20.455(1)(gh). See, e.g., WIS. STAT. § 49.49(6) ("The department of justice shall
deposit in the state treasury for deposit in the general fund all moneys that the court
awards to the department or the state under this subsection. The costs of
investigation and the expenses of prosecution, including attorney fees, shall be
credited to the appropriation account under s. 20.455(1)(gh)."). Numerous other
provisions of the Wisconsin Statutes are written the same way. See, e.g., WIS. STAT.
§ 23.0917(5m)(b)2. ("All proceeds . . . shall be deposited in the general fund and
credited to the appropriation account under s. 20.370(7)(ag)."). In 2017, the
legislature simultaneously amended both § 20.455(3)(g) and WIS. STAT. § 165.10.
2017 Wis. Act. 369, §§ 21, 27. If the legislature wanted "settlement funds"
credited to § 20.455(3)(g), it knew how. See City of Waukesha Bd. of Rev., 399
Wis. 2d 696, ¶38. The legislature elected not to do so; therefore, § 20.455(3)(g) does
not establish an exception to the general crediting rule of WIS. STAT. § 20.906(1).

¶79     Kaul's argument that "proceeds from services" contemplates
"settlement funds" runs afoul of two other principles of statutory interpretation.
"Proceeds from services" appears in a list. Section 20.455(3)(g) appropriates
"moneys received from gifts and grants and all proceeds from services, conferences,
and sales of publications and promotional materials" (emphasis added). Kaul's
construction of the statute would strip "proceeds from services" of the context that
list furnishes. We "interpret[] [language] in the context in which it is used; not in
isolation but as part of a whole; in relation to the language of surrounding or
closely-related statutes." Kalal, 271 Wis. 2d 633, ¶46.

¶80     Reading "proceeds from services" in light of the list in which it
appears in WIS. STAT. § 20.455(3)(g), illustrates that "proceeds from services" has
nothing to do with investigation, negotiation, litigation, or judgments. "[T]he
associated-words canon instructs that associated words bear on one another's
meaning." CED Props., LLC v. City of Oshkosh, 2018 WI 24, ¶40, 380
Wis. 2d 399, 909 N.W.2d 136 (citing SCALIA & GARNER, supra, at 195); see also

SCALIA & GARNER, *supra*, at 196 ("[T]he most common effect of the canon is . . . to limit a general term to a subset of all the things or actions that [the list] covers . . . ."). "Proceeds from services" is a general term limited by the more specific terms in the list. Contextually, "proceeds from services" must mean something similar to its neighbors: "moneys received from gifts and grants" and "proceeds from . . . conferences" and "proceeds from . . . sales of publications and promotional materials." See WIS. STAT. § 20.455(3)(g).

¶81    Every item in that list—gifts, grants, proceeds from conferences, and proceeds from sales of publications and promotional materials—entails a voluntary transaction. Those terms contemplate, for example, a benefactor giving the DOJ new office furniture, a foundation awarding the DOJ a grant to help victims, the DOJ charging conference registration fees, and the DOJ selling guides on state law. Each transaction is voluntary. Conversely, enforcement actions are involuntary. They involve a threat of suit or an actual suit. "Settlement funds" arising from the threat of suit or an actual suit are not compatible with the voluntary transactions populating the list. Accordingly, WIS. STAT. § 20.455(3)(g) cannot be a program appropriation for "settlement funds."

¶82    The whole-text canon also forecloses a textual path for Kaul's arguments. In 2017, the legislature amended WIS. STAT. § 20.455(3)(g) along with two other provisions. See generally 2017 Wis. Act. 369. First, the legislature added language to cap expenditures from § 20.455(3)(g) at the "amount in the schedule," meaning the state's budget controlled by the legislature.[26] 2017 Wis. Act. 369, § 21. Second, the legislature amended WIS. STAT. § 165.10 to remove the reference to § 20.455(3)(g), uncoupling the two provisions. 2017 Wis. Act. 369, § 27. Third, the legislature lapsed those "settlement funds" the attorney general had already credited to § 20.455(3)(g), back to the general purpose revenues of the general fund. 2017 Wis. Act. 369, § 103(1). Collectively, the legislature drained "settlement funds" from § 20.455(3)(g), limited spending outflows to the "amounts in the schedule" controlled by the legislature, and eliminated any avenue for routing funds from § 165.10 to § 20.455(3)(g).

¶83    Kaul argues Act 369 nevertheless allows him to credit "settlement funds" to WIS. STAT. § 20.455(3)(g). Because we read the statutes as a whole, we

---

[26] An "amount in the schedule" incorporates by reference WIS. STAT. § 20.005(3): "The following schedule sets forth all annual, biennial, and sum certain continuing appropriations and anticipated expenditures from other appropriations for the programs and other purposes indicated."

*must read sections 21, 27, and 103 of Act 369 together. Brey v. State Farm Mut. Auto. Ins. Co., 2022 WI 7, ¶13, 400 Wis. 2d 417, 970 N.W.2d 1 ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.") (quoting SCALIA & GARNER, supra, at 167). It is implausible to imagine the legislature modified § 20.455(3)(g) and WIS. STAT. § 165.10 to eliminate the practice of crediting § 165.10 "settlement funds" to § 20.455(3)(g), but at the same time authorized attorneys general to continue crediting tens of millions of dollars to § 20.455(3)(g). The text cannot bear Kaul's construction.*

## *IV. CONCLUSION*

*¶84     WISCONSIN STAT. § 165.10 requires the attorney general to "deposit" all "settlement funds" into the "general fund." "Settlement funds" is a general term encompassing both voluntary settlements and consent judgments. "Settlement funds" does not include any funds controlled by third parties. Accordingly, § 165.10 does not apply to WISCONSIN STAT. § 20.455(1)(hm), a program appropriation for victim restitution.*

*¶85     Once "settlement funds" have been deposited into the general fund, WIS. STAT. § 20.906(1) requires the attorney general to "credit" all "settlement funds" to the "general purpose revenues of the general fund." Section 20.906(1) does not permit the attorney general to "credit" "settlement funds" anywhere else "unless otherwise specifically provided by law."*

*¶86     Because WIS. STAT. § 20.455(1)(gh) "specifically" appropriates to the DOJ moneys received as a result of particular enforcement actions involving consent judgments, § 20.455(1)(gh) provides limited exceptions to the crediting rule of WIS. STAT. § 20.906(1). None of those exceptions, however, apply to voluntary settlements.*

*¶87     Finally, WIS. STAT. § 20.455(3)(g) does not provide an exception to the default rule requiring "settlement funds" to be credited to the general purpose revenues of the general fund. The attorney general may not credit any "settlement funds" to § 20.455(3)(g) in the future. The attorney general must return constitutional control over the People's revenues to the People.*